UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| SHELLY A. GAINES,<br><br>    Plaintiff,<br><br>v.<br><br>UNITED PARCEL SERVICE, INC.,<br><br>    Defendant. | Civ. No. 2:13-3709 (KM) (MCA)<br><br>OPINION |

**MCNULTY, U.S.D.J.:**

This matter comes before the Court upon the motion (Docket No. 5 ("Def. Br.")) of Defendant United Parcel Service, Inc., to dismiss Counts 2, 3, 4, and 5 of the Complaint of Plaintiff Shelly A. Gaines (Docket No. 1 ("Compl.")). For the reasons set forth below, Defendant's motion will be granted.

**I.    BACKGROUND**

Solely for purposes of this motion to dismiss, I take the well-pleaded allegations of the Complaint as true.

According to the Complaint, the Plaintiff, Shelly A. Gaines, an African-American woman, was hired by UPS to work as a part-time recruiter on January 19, 2004. Compl., Count 1 ¶ 2.[1] Around 2006, UPS promoted her to a full-time position as a resource specialist (an office job). *Id.* ¶ 3. Thereafter, in 2009, Plaintiff complained to UPS about "harassment, discrimination, and a hostile work environment because of her race, African American." *Id.* ¶ 4. Gaines alleges that, before she complained of discrimination in 2009, her work was "outstanding and all her performance evaluations were excellent." *Id.* ¶ 5. On June 14, 2012 and August 8, 2012, Gaines made further complaints of discrimination to UPS. In particular, Gaines complained of disparate treatment by her immediate supervisor, Nancy McCarthy, and Human Resources Manager Michelle Hug, both alleged to be Caucasian. *Id.* ¶ 6.

---

[1] Each Count of Plaintiff's Complaint begins anew with ¶ 1. Accordingly, references to the Complaint cite both the Count and the Paragraph number.

1

On August 21, 2012, Gaines gave UPS a doctor's note advising her employer that she was required to wear sneakers or other "soft" footwear at work because of a foot deformity. *Id.* ¶ 7. On September 18, 2012, UPS allegedly responded by directing Gaines to leave work "because Defendant opined that Plaintiff was suffering under the American with Disabilities Act because she could not perform an alleged, essential function of her job, i.e. she could not wear hard toed shoes in the operations hub area." *Id.* ¶ 8. The Complaint alleges that, at this time, UPS regularly permitted similarly situated UPS office employees who did not have foot deformities to wear high heels and other "soft shoes" in the operations hub. *Id.* ¶ 11. Gaines's job duties only required her to spend thirty minutes a day in the hub operations area. UPS also directed Gaines to apply for disability benefits and failed to provide reasonable accommodations. *Id.* ¶ 10. Gaines alleges that UPS used the "hard toed shoes" requirement to discriminate against Gaines because UPS regarded Gaines as handicapped. According to Gaines, UPS refused to permit her to work between September 2012 and April 2013, after which she returned to work.

Plaintiff originally commenced this action on May 31, 2013, in the Superior Court of New Jersey, Law Division, Hudson County (Docket No. HUD-L-2459-13). Docket No. 1 at 1. UPS removed the case to this Court on June 14, 2013. Gaines's Complaint alleges five claims against UPS: (1) racial and handicap discrimination in violation of the New Jersey Law Against Discrimination ("NJLAD"); (2) Retaliation under the NJLAD; (3) Intentional Infliction of Emotional Distress "(IIED"); (4): Negligence/Breach of Ordinary Care; (5): Breach of Express and Implied Contracts.

On July 5, 2013, UPS moved to dismiss counts two, three, four and five of the Complaint pursuant to Fed. R. Civ. P. 12(b)(6). Def. Br. UPS submits that these claims are time barred; that they are preempted by Gaines's NJLAD claim (Count 1); that they are barred by the New Jersey Workers' Compensation Act; or that they otherwise fail to state a claim on which relief may be granted.

## II. DISCUSSION

### A. Legal Standard of Review

Rule 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if it fails to state a claim upon which relief can be granted. The defendant, as the moving party, bears the burden of showing that no claim has been stated. *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005). In deciding a Rule 12(b)(6) motion, a court must take the allegations of the complaint as true

and draw reasonable inferences in the light most favorable to the plaintiff. *Phillips v. County of Allegheny,* 515 F.3d 224, 231 (3d Cir. 2008) (traditional "reasonable inferences" principle not undermined by *Twombly, see infra*).

Federal Rule of Civil Procedure 8(a) does not require that a complaint contain detailed factual allegations. Nevertheless, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555 (2007). Thus, the complaint's factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, so that a claim is "plausible on its face." *Id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.,* 542 F.3d 59, 64 (3d Cir. 2008). That facial-plausibility standard is met "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal,* 556 U.S. 662, 678 (2009) (citing *Twombly,* 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal,* 556 U.S. at 678.

"Under Fed. R. Civ. P. 8(c), the statute of limitations constitutes an affirmative defense to an action. Under the law of this and other circuits, however, the limitations defense may be raised on a motion under Rule 12(b)(6), but only if 'the time alleged in the statement of a claim shows that the cause of action has not been brought within the statute of limitations.'" *Bethel v. Jendoco Const. Corp.,* 570 F.2d 1168, 1174 (3d Cir. 1978) (quoting *Hanna v. U.S. Veterans' Admin. Hosp.,* 514 F.2d 1092, 1094 (3d Cir. 1975)). If the time bar is not apparent from the face of the complaint, "then it may not afford the basis for a dismissal of the complaint under Rule 12(b)(6)." *Id.*

B. Plaintiff's Claims

### 1. Count 2: NJLAD Retaliation Claim

Defendant argues that Plaintiff's NJLAD Retaliation claim should be dismissed because (1) the claim is time-barred (at least in part) and (2) because there are no facts pleaded identifying a "protected activity" under the NJLAD. I disagree and will deny the motion to dismiss this claim.

### a. Statute of Limitations

Plaintiff commenced this action in state court on May 31, 2013. The statute of limitations for NJLAD claims is two years from the date of accrual. *See Thomas v. Care Plus of New Jersey, Inc.*, 484 F. App'x 692, 693 (3d Cir. 2012). Defendant therefore argues that any acts of retaliation occurring on or before May 31, 2011, are time-barred and should be dismissed.

The Complaint alleges that Gaines first complained about racial discrimination, harassment, and a hostile work environment in 2009. She says she again complained about differential treatment due to her race in June and August of 2012. She provided UPS with a doctor's note requesting an accommodation regarding her footwear on August 21, 2012.

The nub of Gaines's Count 2 allegations, however, is *retaliation* for those complaints or requests. The Complaint alleges that, between 2009 and September 2012, UPS engaged in "numerous hostile acts" against her. Compl., Count 2, ¶ 3. That allegation, for sure, is somewhat vague about dates, but Gaines does specifically allege that, "after being directed by Defendant to leave work on or about August 8, 2012, HR Manager, Michelle Hug advised Plaintiff that she could [] return to work only if she signed an agreement to stop complaining to upper management about the differential treatment." *Id.* Further, Gaines alleges that, since her return to work in April 2013, "Defendant continues to retaliate against her with the purpose of unreasonably interfering with her work" by, for example, refusing to allow her to return to her prior duties, demoting her from her salaried position, and denying a pay increase. *Id.*

The plain reading of these allegations of retaliation is that they did not occur until her return to work in April 2013, well within the two-year limitations period. There may be alleged acts of retaliation that occurred outside of the two year statute of limitations, but the facts pleaded in the complaint do not permit me to conclude whether they might be actionable under a continuing violation theory. At any rate, however, I am satisfied that Count 2 contains allegations that are not time-barred, and I will not subdivide it any further; I will deny the motion to dismiss Count 2.

### b. Failure to plead a protected activity

"The NJLAD prohibits unlawful discrimination against an individual with respect to terms and conditions of employment because of various traits and characteristics, including, but not limited to, race, religion, age, sex and

4

disability." *Davis v. Supervalu, Inc.*, CIV. 13-414 JBS/JS, 2013 WL 1704295, at *4 (D.N.J. Apr. 19, 2013) (citing N.J.S.A. 10:5–12(a)). The NJLAD also makes it unlawful "to take reprisals against any person because that person has opposed any practices or acts forbidden under" the act or "because he has filed a complaint, testified or assisted in a proceeding" under the Act. N.J.S.A. 10:5–12(d). In addition to formal letters of complaint to an employer or the Equal Employment Opportunity Commission ("EEOC"), "informal protests of discrimination to management may qualify as protected activity" under the NJLAD. *DeJoy v. Comcast Cable Commc'ns Inc.*, 968 F. Supp. 963, 988 (D.N.J. 1997) (citing *Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995)).

The United States Court of Appeals for the Third Circuit has held that, to establish a prima facie case for retaliation under the NJLAD, a plaintiff must plead that "(1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that there was a causal connection between the protected activity and the adverse employment action." *Davis v. City of Newark*, 417 F. App'x 201, 202 (3d Cir. 2011). Once a prima facie case for retaliation is established, the burden of production shifts to the employer to articulate a legitimate reason for the adverse employment action. *Woods-Pirozzi v. Nabisco Foods*, 290 N.J. Super. 252, 274, 675 A.2d 684, 695 (App. Div. 1996) (citation omitted). "Plaintiff must then show that a retaliatory intent, not the proffered reason, motivated defendant's actions." *Id.* Moreover, as recently clarified by the Supreme Court of New Jersey, a plaintiff can only recover where a complaint was made with a "good faith belief that the conduct complained of violates the NJLAD." *Battaglia v. United Parcel Serv., Inc.*, 214 N.J. 518, 549, 70 A.3d 602, 620 (2013).

At this stage, then, Plaintiff must plead facts sufficient to render it "plausible on its face," *Iqbal*, 556 U.S. at 678, that she engaged in protected activity, that she suffered an adverse employment action, and that there was a causal connection between the two. What the Complaint does allege is that "in or about 2009, Plaintiff complained to Defendant about harassment, discrimination and hostile work environment because of her race, African American." Compl. ¶ 4. Further, she alleges that, "[o]n or about June 14, 2012, and August 8, 2012, Plaintiff again complained to Defendant UPS about differential treatment from her immediate supervisor, Nancy McCarthy and also from HR Manager Michelle Hug (both Caucasians)." Compl. ¶ 6. Gaines alleges that, since 2009, she was retaliated against "because of her complaints of differential treatment based on her race, African American, perceived handicap

and attendant retaliation." Compl., Count 2, ¶ 2. She lists numerous acts of discrimination, including refusal to allow her to return to her prior duties, demotion from her salaried position to an hourly position with a different schedule, and denial of a pay increase. Complaint, Count 2, ¶ 3.

Primarily in dispute here is whether these allegations set forth the first element of a prima facie case of retaliation: engaging in protected activity. According to Plaintiff, African Americans have been a protected class under the NJLAD since its inception and complaining about racial discrimination is a protected activity under the NJLAD. *See, e.g., Barber v. CSX Distribution Servs.*, 68 F.3d 694, 702 (3d Cir. 1995) (even informal complaint to management about discrimination can constitute cognizable protected activity under the NJLAD). I agree, and UPS does not really attack this as a legal premise. The issue boils down to whether Gaines's allegations are sufficiently specific and plausible.

In *Buckley v. Power Windows & Siding, Inc.*, Judge Pisano dismissed a claim that the defendants "engaged in behavior which was harassing and discriminatory towards Plaintiff on the basis of her age," that she "suffered intentional harassment because of her age," and that the alleged "discriminatory conduct was based upon" her age. CIV.A. 09-3162 JAP, 2010 WL 3981978, at *4 (D.N.J. Oct. 7, 2010). Judge Pisano concluded that "'these naked assertion[s]' devoid of 'further factual enhancement' and legal conclusions are insufficient to state a claim." *Id.* (quoting *Iqbal*, 129 S.Ct. at 1949).

According to UPS, Gaines's Complaint similarly asserts nothing more than conclusory allegations of protected activity under the NJLAD. Plaintiff responds that she has alleged facts: that she is African American, and that she complained of discrimination three times: in 2009, on June 14, 2012, and on August 8, 2012. She lists the alleged acts of retaliation, including UPS's alleged refusal to allow her to return to work for some eight months.

To be sure, there is much factual development to be done in discovery. There is enough here, however, to permit the case to go forward. As to Count 2, the motion to dismiss is denied.

### 2. Count 3: Intentional Infliction of Emotional Distress

Count 3 alleges that the discriminatory conduct of UPS constituted Intentional Infliction of Emotional Distress ("IIED"), a state common-law tort. Gaines alleges that, in committing the alleged acts of discrimination and retaliation, UPS intentionally and willfully subjected Gaines to emotional

distress "which it knew or should have known would result in illness or other bodily harm" to Gaines, including "deprivations of physical and mental health," Complaint, Count 3, ¶ 2. She alleges that, as a result of this emotional distress, she has endured mental suffering, anxiety, depression, and severe emotional distress. *Id.* ¶ 3. In support of dismissal, Defendant submits that the IIED claim is: (1) preempted by Gaines' statutory LAD claims and (2) insufficiently pleaded. I agree, and will dismiss Count 3.

### a. NJLAD Preemption

I first deal with preemption. "Where the factual predicates for the common law claims and the NJLAD claims are the same and the remedies sought are the same, the common law claims are barred." *Schnieder v. Sumitomo Corp. of Am.*, (D.N.J. Dec. 22, 2009). "Because of the broad availability of remedies under the NJLAD, both state and federal courts in New Jersey have frequently held that the NJLAD bars common law claims based on the same operative facts as underlie the NJLAD claim." *Everson v. JPMorgan Chase Bank*, CIV.A. 12-07288 FLW, 2013 WL 1934666, at *2 (D.N.J. May 8, 2013) (citations omitted).

In *Metzler v. American Transportation Group, L.L.C*, Judge Linares considered a defendant's motion to dismiss a plaintiff's IIED claims. The defendants argued that the plaintiff could not supplement her NJLAD claim with her common law tort claims. Judge Linares agreed and dismissed the IIED claims, reasoning that the "NJLAD provides plaintiffs with all remedies available in common law tort actions." *Metzler v. Am. Transp. Grp., L.L.C.*, CIV. A. 07-2066 JLL, 2008 WL 413311, at *4 (D.N.J. Feb. 13, 2008) (citing N.J.S.A. § 10:5-3; *Catalane v. Gilian Instrument Corp.*, 271 N.J.Super. 476, 492, 638 A.2d 1341 (N.J. Super. Ct. App. Div. 1994)). The exclusivity of the NJLAD therefore preempts any supplemental common law tort action that is based "on the same factual predicate." *Id.* (citing *Toscano v. Borough of Lavallette*, No. 04-4412, 2006 WL 1867197, at *9 (D.N.J. June 30, 2006) (granting defendant's motion for summary judgment on negligence claim where no new allegations were made against the defendants and the claim was based on the same factual assertions as the NJLAD claim); *Quarles v. Lowe's Home Ctr.*, No. 04-5746, 2006 WL 1098050, at *4 (D.N.J. March 31, 2006) (holding that IIED claims based on the same allegations supporting plaintiff's NJLAD claim was barred by NJLAD)); *see also Buckley v. Power Windows* & Sliding, Inc., CIV.A. 09-3162 JAP, 2010 WL 3981978, at *5 (D.N.J. Oct. 7, 2010) (noting that New Jersey courts have held that intentional and negligent infliction of emotional distress claims are preempted by the NJLAD); *Valentine v. Bank of Am.*, CIV.A.

7

09-262 (SDW), 2010 WL 421087 (D.N.J. Feb. 1, 2010) (denying leave to amend a complaint as futile and reasoning that "[w]hen a common law claim of intentional infliction of emotional distress is based on the same allegations supporting Plaintiff's NJLAD claim, Plaintiff is not entitled to relief").

Similarly instructive is *Everson v. JPMorgan Chase Bank*, in which Judge Wolfson considered a motion to dismiss because, *inter alia*, the plaintiff's breach of contract, negligent infliction of emotional distress, and IIED claims were preempted by the NJLAD. 2013 WL 1934666. Judge Wolfson dismissed the plaintiff's IIED claim, finding that it was duplicative of and preempted by the NJLAD claim. *Id.* at *4.

> Plaintiff's IIED claim is based on the same operative facts as underlie her NJLAD claim. In addition to the facts discussed in the previous section, which are incorporated into Plaintiff's IIED claim, . . . the paragraphs specific to the IIED claim reinforce that the crux of the claim is the same alleged discrimination being used to support Plaintiff's NJLAD claim.

*Id.*

Count 3 of Gaines's Complaint, the IIED claim, specifically incorporates by reference the allegations of Counts 1 and 2, the NJLAD discrimination and retaliation claims. Complaint Count 3, ¶¶ 1, 2. Count 3 "repeats and realleges the allegations of the First and Second Counts of this Complaint and makes them part of this Count, as if fully set forth herein." *Id.* ¶ 1. Count 3 alleges that "in committing the above described acts [*i.e.*, the acts alleged in Count 1 and 2], Defendant intentionally and willfully subjected Plaintiff to emotional distress . . . ." *Id.* ¶ 2. In short, the IIED claim in Count 3 is based solely on the allegations underlying the NJLAD claims; the factual predicate is the same. This Complaint is therefore on point with, and governed by, the preemption case law cited above.[2]

---

[2] Plaintiff cites *Mosley v. Bay Ship Management, Inc.*, which held that a plaintiff may be able to pursue a common law claim independent of a statutory claim under the NJLAD. 174 F.Supp.2d 192, 201 (D.N.J. 2000). *Mosley* relied, however, on statements from the New Jersey Supreme Court to the effect that a plaintiff "in appropriate circumstances could pursue an independent action . . . to vindicate particular interests in addition to or aside from those sought to be protected by a NJLAD action.'" *Id.* (quoting *Shaner v. Horizon Bancorp*, 116 N.J. 433, 454, 561 A.2d 1130 (N.J. 1989)). Here, the allegations comprising Gaines' IIED claim do not invoke any interest separate and distinct from those underlying the NJLAD claims. Moreover,

I will follow the lead of the cases, cited above, that have dismissed IIED claims on NJLAD preemption grounds at the motion to dismiss stage. Gaines has not cited contrary case law; she has not identified any independent factual basis for her IIED claim; and she does not seek any remedy unavailable to her under the NJLAD.

Count 3, the IIED claim, is therefore preempted by Gaines' statutory claims under the NJLAD and will be dismissed.

### b. Failure to state an IIED claim

In addition, and in the alternative, I find that the Complaint does not plead a legally sufficient IIED claim. The New Jersey Supreme Court has laid out the essential elements of IIED:

> [T]he plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe. Initially, the plaintiff must prove that the defendant acted intentionally or recklessly. For an intentional act to result in liability, the defendant must intend both to do the act and to produce emotional distress. Liability will also attach when the defendant acts recklessly in deliberate disregard of a high degree of probability that emotional distress will follow.
>
> Second, the defendant's conduct must be extreme and outrageous. The conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Third, the defendant's actions must have been the proximate cause of the plaintiff's emotional distress. Fourth, the emotional distress suffered by the plaintiff must be "so severe that no reasonable man could be expected to endure it."

---

in *Martinez v. Anselmi & Decicco, Inc.*, Judge Linares rejected *Mosely* and was "persuaded by the reasoning in the majority of cases that have found that such [supplemental common law tort] claims are barred as duplicative of the NJLAD." CIV. A. 09-5277(JLL), 2009 WL 5206286, at *8 (D.N.J. Dec. 22, 2009). I agree with Judge Linares's reasoning, and I am not persuaded that *Mosley* precludes preemption of an IIED claim that is asserted on the same factual basis as an NJLAD claim or claims.

*Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366-67, 544 A.2d 857, 863 (1988).

What Count 3 of the Complaint alleges is an ordinary case of employment discrimination. It does not allege outrageous, atrocious conduct likely to cause extreme emotional distress. If Count 3 were not preempted by Counts 1 and 2, I would dismiss it for failure to state a claim.

### 3. Count 4: Negligence/Breach of Ordinary Care

Count 4 of the Complaint sounds in negligence. It alleges that UPS "had a duty to use ordinary in their investigation of a perceived disability and retaliation complaints by its employees and in supervising their staff's response to the complaints, and this Defendant negligently, unlawfully, recklessly, and improperly investigated and supervised Plaintiff's charges of discrimination and retaliation . . . ." Complaint, Count 4, ¶ 3. As to the underlying facts, Plaintiff "repeats and realleges the allegations of the First, Second, and Third Counts" of the Complaint and "makes them a part of" Count 4. Complaint, Count 4, ¶ 1.

In support of its motion to dismiss, UPS argues that Count 4 is preempted by the NJLAD claim asserted in Count 1; that it is barred by the New Jersey Workers' Compensation Act; and that it fails to state a cause of action. I will dismiss Count 4 on preemption grounds.

*a. Preemption under the NJLAD*

Case law suggests that a negligence claim based on the same factual allegations as an NJLAD claim is barred. In *Toscano v. Borough of Lavallette*, for instance, the plaintiff alleged discrimination under the NJLAD, but also alleged that the defendants "acted in a careless and negligent manner by allowing, 'condoning, ratifying, and/or acquiescing to libelous and slanderous statements of and concerning the plaintiff.'" *Toscano v. Borough of Lavallette*, CIV A. 04-4412 (MLC), 2006 WL 1867197, at *9 (D.N.J. June 30, 2006) (quoting complaint). Judge Cooper reasoned that plaintiff's negligence claim was "an alternate common law cause of action" that asserted "no new allegations against the defendants, and is based on the same factual assertions as" the NJLAD claim. *Id.* Finding that such an action was "not allowed when the NJLAD provides a remedy for the wrong," she granted summary judgment in favor of the defendant on the negligence claim. *Id.* (citations omitted).

Gaines's complaint alleges no independent factual basis for the negligence claim; to all appearances, it is simply an alternative legal theory

based on the same facts underlying the IIED claim. Count 4 merely repeats and incorporates the allegations made in Counts 1–3.[3] The alleged negligence consists of nothing beyond UPS's failure to address Gaines's complaints of discrimination. Complaint, Count 4, ¶ 1–3. I find that Count 4, like Count 3, is preempted by the NJLAD. *See* Part II.B.2 (discussing NJLAD preemption).

### b. *Preemption under the Workers' Compensation Act*

In addition, and in the alternative, I conclude that Count 4 is preempted by the exclusive remedy provision of the New Jersey Workers' Compensation Act. "Under Jersey law an action in negligence against an employer is barred by the New Jersey Workers Compensation Act, N.J.S.A. § 34:15–8.5." *Silvestre v. Bell Atl. Corp.*, 973 F. Supp. 475, 486 (D.N.J. 1997) (reasoning that an employee cannot assert a claim for negligent hiring and supervision against an employer because an action in negligence against an employer is barred by the New Jersey Workers Compensation Act), *aff'd*, 156 F.3d 1225 (3d Cir. 1998).[4]

Plaintiff replies that the New Jersey Workers' Compensation Act does not bar intentional torts. Pl. Br. at 16 (citing *Millison v. E.I. du Pont de Nemours Co.*, 101 N.J. 161, 185 (N.J. 1985)). In *Millison*, the Supreme Court of New Jersey held that "the intentional wrongs of an employer as well as those of co-employees fall outside of the boundaries of the Compensation Act." *Millison*, 101 N.J. at 185, 501 A.2d at 518.

Count 4, however, clearly sounds in negligence; it alleges breach of a duty of reasonable care, not any intentional tort. Specifically, it alleges that UPS "negligently, unlawfully, recklessly, and improperly investigated and supervised Plaintiff's charges of discrimination and retaliation . . . ." Complaint, Count 4, ¶ 3.

---

3   Of course, Count 3 itself contains no allegations other than those incorporated from Counts 1 and 2.

4   In pertinent part, the statute provides that:

> If an injury or death is compensable under this article, a person shall not be liable to anyone at common law or otherwise on account of such injury or death for any act or omission occurring while such person was in the same employ as the person injured or killed, *except for intentional wrong*.

N.J.S.A. § 34:15–8 (emphasis added).

11

Although there are exceptions to the "exclusive remedy rule," *see, e.g., Rorrer v. Cleveland Steel Container*, 712 F. Supp. 2d 422, 437 (E.D. Pa. 2010) (exception where employer's negligence enables a co-worker to intentionally injure employee), none apply here, and Plaintiff does not suggest any. Therefore, the "exclusive remedy" provision is applicable to Gaines' negligence claim brought against her employer, UPS. *See, e.g., Cremen v. Harrah's Marina Hotel Casino*, 680 F. Supp. 150, 155–56 (D.N.J. 1988) (finding that plaintiff's claim, sounding in negligence, was barred by the exclusive remedy provision where plaintiff alleged that employer acted with gross negligence in hiring and retaining a co-worker after sexual harassment allegations were made against the co-worker).

For this independent reason, too, Count 4 will be dismissed.

### 4. Count 5: Breach of Express and Implied Contracts

Count 5 of the Complaint alleges breach of express and implied contracts with UPS. Defendant's defective investigation of Gaines's complaints, she says, "violated rules and policies governing disability and retaliation." Complaint, Count 5, ¶ 2. Further, she alleges that, "[b]y reason of Defendant's express and implied promises in its written policies and procedures, Plaintiff reasonably expected that Defendant would not arbitrarily deny her requests to wear soft shoes." *Id.* ¶ 3. In exposing Gaines to harassment and retaliation, "Defendant wrongfully breached express and implied contracts made to Plaintiff at the time of the commencement of her employment and thereafter and relied upon by Plaintiff in continuing such employment." *Id.* ¶ 5.

Generally, to state a claim for breach of contract under New Jersey law, a plaintiff "must allege (1) a contract between the parties; (2) a breach of that contract; (3) damages flowing therefrom; and (4) that the party stating the claim performed its own contractual obligations." *Frederico v. Home Depot*, 507 F.3d 188, 203 (3d Cir. 2007). In support of dismissal, UPS submits (1) that Count 5 is preempted by the NJLAD; and (2) that it fails to allege the existence of a contract, because it does not identify the "rules" or "policies" that UPS allegedly violated. I agree, and will dismiss Count 5.

#### a. NJLAD preemption

First, I find that the common law contract claims in Count 5 are duplicative of Counts 1 and 2, and therefore preempted by the NJLAD. Gaines responds that the allegations of Count 5 are distinct from the NJLAD claims, but does not support that contention with any specifics.

Clearly, a contract claim may be preempted by the NJLAD. In *Everson v. JPMorgan Chase Bank*, Judge Wolfson relied on NJLAD preemption to dismiss a breach of contract claim where the plaintiff "incorporate[d] numerous facts into her breach of contract claim that make it clear that her breach of contract claim sounds in discrimination." CIV.A. 12-07288 FLW, 2013 WL 1934666, at *3 (D.N.J. May 8, 2013). In *DeCapua v. Bell Atl.-New Jersey, Inc.*, the court granted summary judgment in favor of the defendant "because plaintiff's common-law breach of contract claim duplicate[d] his statutory claim under New Jersey's Law Against Discrimination." 313 N.J. Super. 110, 128, 712 A.2d 725, 734 (Ch. Div. 1998) (citing *Catalane*, 271 N.J. Super. at 491–92, 638 A.2d 1341 (App. Div. 1998)); *see also Santiago v. City of Vineland*, 107 F. Supp. 2d 512, 567 (D.N.J. 2000) (finding that common law contract claims were "preempted by the NJLAD because the common law claims are premised upon the same discriminatory conduct as alleged under the state statute").

Such preemption, moreover, extends to implied, as well as express, contract claims. "[C]ourts have held that a breach of contract claim that seeks damages for discriminatory acts on the basis of a statement in a policy manual is preempted by the NJLAD." *Martinez v. Anselmi & Decicco, Inc.*, CIV. A. 09-5277(JLL), 2009 WL 5206286 (D.N.J. Dec. 22, 2009) (quoting *Finn v. J.B. Hunt Transp. Servs.*, No. 07–4851, 2009 WL 2058850, at *6 (D.N.J. July 7, 2009)). In *DiMare v. Metlife Ins. Co.*, for example, the plaintiff asserted "that Defendants breached an implied contract with Plaintiff by failing to 'treat Plaintiff in a fair, equitable, and nondiscriminatory manner regarding her past health condition/or disability.'" *DiMare v. Metlife Ins. Co.*, CIV. 07-4268 (GEB), 2008 WL 2276007, at *4 (D.N.J. June 2, 2008), *aff'd*, 369 F. App'x 324 (3d Cir. 2010) (quoting the plaintiff's complaint). That implied contract claim was based on "Defendant's conduct and treatment of other employees throughout the period within which the Plaintiff was employed by Defendants." *Id.* The court concluded that "this broad and vague claim is also preempted by the NJLAD and must be dismissed because it is entirely duplicative of Plaintiff's NJLAD claim." *Id.* (citing *Santiago*, 107 F. Supp. 2d at 568).

The contract claim here is of the same ilk. It is parallel to, even duplicative of, the NJLAD allegations. I conclude that it is preempted.

### b. *Failure to state a contract claim*

In the alternative, I hold that Count 5 fails to allege a breach of contract claim with the requisite specificity. In short, it is impossible to discern what the alleged contract consists of.

Count 5 alleges generally that UPS's investigation and response to her complaints "violated rules and policies governing disability and discrimination." Importantly, general policies and procedures do not rise to the level of legal contracts. *In Kapossy v. McGraw-Hill, Inc.*, a plaintiff alleged that defendant was contractually bound by statements made in its "Code of Business Ethics, in statements of its Equal Employment Opportunity Policy and by 'past practices.'" 921 F. Supp. 234, 245, n.12 (D.N.J. 1996). The court found that "the generalized conclusory statements of purpose contained in these documents do not give rise to contractual rights." *Id.* (citing *Tripodi v. Johnson & Johnson*, 877 F. Supp. 233, 240 (D.N.J. 1995) ("Corporate 'Credo' which states general policies and goals of the company lacks the specificity required by *Woolley*)); *see also Catalane*, 271 N.J. Super. at 495, 638 A.2d at 1350 ("*Woolley* contemplates that the policy manual must contain more than the company's general policies or goals" to constitute a legal contract.); *Bell v. KA Indus. Servs., LLC*, 567 F. Supp. 2d 701, 710 (D.N.J. 2008) (dismissing implied contract claim where plaintiff had "not alleged the existence of a manual, much less identified a provision or language guaranteeing job security, he has failed to allege facts that raise his claims above the speculative level").

Count 5 fails to specify what rules, policies, or procedures (either written, oral, or otherwise) constitute the contract that was allegedly breached. *See* Complaint, Count 5, ¶ 3. Gaines alleges in conclusory fashion that UPS breached both written and implied contracts that "she would not be sent home from work and denied income because her deformed foot precluded her from wearing soft shoes." Pl. Br. at 18. The Complaint does not identify the source of any such express or implied agreement regarding footwear policies. Even in her opposition brief, Gaines does not identify any specific relevant oral or written "policies and procedures." Although she contends that her claim depends on the interpretation of a "disclaimer," Pl. Br. at 17, she does not identify this disclaimer or state where it might be found.

Count 5, because it is preempted by NJLAD and fails to state a claim of breach of contract, will be dismissed.

## III. CONCLUSION

For the foregoing reasons, UPS's motion to dismiss will be **DENIED** as to Count 2 and **GRANTED** as to Counts 3, 4 and 5. An appropriate Order follows.

DATED: April 14, 2014

*[signature]*

**KEVIN MCNULTY**
**United States District Judge**